**GAF CORPORATION, Plaintiff,**

v.

**William O. POOLE, R. Power Fraser, Walter Welch, and all others similarly situated, Defendants.**

**No. 83 Civ. 7766 (KTD).**

United States District Court, S.D. New York.

May 11, 1989.

Carpenter, Bennett & Morrissey, Newark, N.J. (Francis X. Dee, Patrick G. Brady, David J. Reilly, of counsel), for plaintiff.

Hancock & Estabrook, Syracuse, N.Y. (David E. Peebles, R. John Clark, Renee L. James, of counsel), for defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff GAF Corporation ("GAF") moves in this class action for summary judgment pursuant to Fed.R.Civ.P. 56: (1) declaring that the amendment of GAF's Comprehensive Medical Plan for Retired Employees ("Medical Plan"), which excludes from coverage those retired employees who subsequently became employed by employers offering medical coverage, is a valid and effective exclusion, and (2) dismissing defendants' three counterclaims set forth in their Second Amended Answer with Class Action Counterclaim ("Second Amended Answer"). Defendants cross-move pursuant to Fed.R.Civ.P. 56 for partial summary judgment declaring that GAF's amendment of the Medical Plan is invalid as it relates to them. Defendants also move for affirmative relief, including reinstatement by GAF of medical benefit coverage for all retirees whose coverage was terminated as a result of the amendment to the Medical Plan, upon the same terms and costs as applied prior to that amendment.

### Facts

GAF's Summary Plan Description ("SPD") for the Medical Plan, issued in 1975 and applicable at all relevant times here, contains a reservation of rights clause that provides:

> GAF fully expects and hopes to continue the plan described herein indefinitely. However, GAF reserves the right to change or terminate the plan, in whole or in part at any time in conformity with applicable legislation and subject to any outstanding contractual agreements.

Affidavit of Ellen O'Neill In Support of Plaintiff GAF Corporation's Motion for Summary Judgment, Exh. 1.

GAF divested several of its business and product lines during 1979 to 1982. As a result, GAF advised employees of its divested divisions that those eligible for early retirement could choose either early retirement upon leaving GAF, or could defer retirement to a later date even though GAF employment was ending upon the sale of the division. If early retirement was chosen, retirement benefits would be reduced by 4% for each year the retiree was under

age 65. The employees were also advised that those who were eligible for early retirement and had participated for at least ten years in the Medical Plan would be entitled to continuing medical coverage as a retiree if early retirement was elected. However, any right to continued coverage would be forfeited, other than through conversion to coverage at the employee's expense, if early retirement was not elected.

In 1983 GAF amended the Medical Plan to terminate medical coverage for retirees who left GAF and subsequently became employed and eligible for medical coverage, regardless of terms and cost, with their new employer. Termination of coverage became effective October 31, 1983, or the first day thereafter that a retiree became employed by an employer who offered its own coverage. Reinstatement to GAF coverage upon subsequent loss of such reemployment coverage was available only until December 31, 1984. In addition GAF later amended the Medical Plan in three stages to increase monthly premiums and deductibles for those who remained in the Medical Plan.

By Memorandum and Order dated January 6, 1984, this court granted GAF's motion to certify a defendant class of approximately 2,200 former GAF employees who opted for early retirement from GAF in late 1981, exclusive of those who became reemployed by Anitec Image Corp a/k/a/ Aprint Image Technology Corp. following the sale of GAF's graphic arts business to Anitec. Subsequently, by Memorandum and Order filed April 29, 1985, this court granted defendants' motion under Fed.R. Civ.P. 15(d) for leave to supplement their Amended Counterclaim to allege that GAF breached an alleged contract with defendants to provide lifetime medical coverage by increasing the monthly premium rates paid by Medical Plan participants, effective June 1 and October 1, 1984, and January 1, 1985, and increasing the annual deductibles for hospital and medical expenses, effective June 1, 1984. Familiarity with these opinions is assumed.

## Discussion

Defendants now allege three counterclaims in their Second Amended Answer. First, defendants allege that GAF violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982), and federal common law by amending the Medical Plan to terminate participation of certain class members and increasing premium payments and deductibles for class members. They next allege that GAF breached its contract with those employees that accepted early retirement "to his or her detriment in return for a promise of participation in the Plan, as it existed, and at the contribution rates and with terms of coverage applicable at the time of early retirement." Second Amended Answer ¶ 40. The third counterclaim alleges that GAF's SPD relating to the Medical Plan violates § 102 of ERISA, 29 U.S.C. § 1022, because it is not written in a manner calculated to be understood by the participants.

GAF argues that the Second Circuit's decision in *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488 (2d Cir.1988), is dispositive of the issues in this case. *Moore* held that "unambiguous provisions of the [medical benefits] plan must govern, because altering a welfare benefit plan on the basis of non-plan documents and communications, absent a particularized showing of conduct tantamount to fraud, would undermine ERISA." *Id.* at 489. The Court further noted that an "ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries." *Id.* at 492.

As stated in my January 6, 1984, Memorandum and Order, the Medical Plan appears to be an employee welfare benefit plan within the meaning of § 3(1) of ERISA, 29 U.S.C. § 1002(1). Therefore, that portion of defendants' first counterclaim which alleges that their medical benefits are "vested" under ERISA must be dismissed. "Automatic vesting does not occur in the case of welfare plans." *Moore*, 856 F.2d at 491.

■ Defendants' breach of contract theory, however, rests on disputed facts. This theory, which is raised in defendants' second counterclaim and that portion of the first counterclaim which alleges breach of contract under federal common law, is based on the express clause in the SPD that makes GAF's right to amend or terminate the Medical Plan subject to "outstanding contractual obligations." The affidavits of class members submitted in support of defendants' cross-motion for summary judgment allege that GAF management employees made oral and written representations to Medical Plan participants that promised that GAF would provide continuing medical coverage, upon terms at least as favorable as those in existence at the time of their retirement, if early retirement was elected. The defendants, particularly the approximately 200 class members who elected early retirement following divestiture of certain GAF businesses, contend that a bargained for "exchange" took place whereby they accepted GAF's offer and chose to give up normal retirement in exchange for early retirement at reduced benefits and continued participation in the Medical Plan on the terms then in effect. Thus they contend that GAF's actions constitute an "outstanding contractual agreement" of the type referred to in the SPD and GAF is accordingly not entitled to change or terminate the plan as to those defendants.

The threshold question of whether or not "outstanding contractual agreements" between GAF and certain defendants exist within the meaning of the exception to the reservation of rights clause can not be resolved on these summary judgment motions. The SPD in *Moore* is distinguishable because its reservation of rights language was not made subject to outstanding contractual obligations. *See* 856 F.2d at 490. Moreover, in determining whether GAF's conduct in allegedly encouraging employees to elect early retirement was "objectively, even if unintentionally, misleading," it is GAF's conduct itself which is in dispute and thus factual questions exist which preclude summary judgment.

■ Defendants contend in their third counterclaim that the language of the GAF SPD, particularly the reservation of rights clause, violates § 102 of ERISA because it is not written in a manner calculated to be understood by the average Medical Plan participant regarding possibilities of "disqualifications, ineligibility or denial or loss of benefits." Second Amended Answer ¶¶ 43–45. This language, however, indicates in a straightforward way GAF's reservation of a right to amend or terminate benefits in the Medical Plan. *See Moore*, 856 F.2d at 492. The language of the SPD is "written in a manner calculated to be understood by the average plan participant," as required by § 102(a)(1) of ERISA, and was not written in "technical jargon or in other than plain, easy to understand English." *Morse v. Stanley*, 732 F.2d 1139, 1147 (2d Cir.1984). Indeed, the gravamen of the dispute here concerns not the language itself but how that language is to be applied to the facts presented by these cross-motions. The third counterclaim is therefore dismissed.

In sum, the defendants' motion for summary judgment is denied in all respects and GAF's motion for summary judgment is granted insofar as both the defendants' third counterclaim and that portion of defendants' first counterclaim that alleges vesting of medical benefits under ERISA are dismissed. Defendants' second counterclaim and that portion of their first counterclaim that alleges breach of contract survive.

SO ORDERED.